UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM WELLS, K72728, | |
| Petitioner, | No. 15 C 1844 |
| v. | Judge Thomas M. Durkin |
| RANDY PFISTER, Warden, Stateville Correctional Center, | |
| Respondent. | |

MEMORANDUM OPINION AND ORDER

William Wells was convicted of three counts of attempted first degree murder of a police officer, three counts of attempted first degree murder, and two counts of aggravated battery with a firearm. *See* R. 1; R. 7; *see also* R. 24-1 (*People v. Wells*, 07-3120 (Ill. App. Ct. 1st Dist. Sept. 21, 2009). He is serving a prison term of 47 years, at the Stateville Correctional Center in Chest Hill, Illinois, where he is in the custody of Warden Randy Pfister.[1] *Id*. Wells seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. 1; R. 7. Wells has also filed a motion for a stay, R. 8, and

---

[1] Tarry Williams was the Warden of Stateville Correctional Center when Wells filed his petition. *See* R. 1. Williams was no longer the Warden when the State responded to Wells's petition. *See* R. 23 at 1 n.1. At that time, Assistant Warden of Operations, Nicholas Lamb, had charge of Stateville's day-to-day operations and so had custody of Wells. *See id*. Randy Pfister is now Stateville's Warden where Wells still resides. *See* the Stateville webpage, http://www.illinois.gov/idoc/facilities/pages/stateville correctionalcenter.aspx (last visited Mar. 3, 2016). Accordingly, Warden Pfister is substituted as the proper respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held."); *see also Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005).

a motion seeking additional expert analysis of ballistics evidence from his case, R. 9. The Warden responded to the petition and motions arguing that the petition should be denied as untimely and procedurally defaulted. R. 23. For the following reasons, Wells's petition and motions are denied, and the Court declines to issue a certificate of appealability.

## Background

I.  Facts

On November 14, 2001, four Chicago police officers were on patrol in an unmarked vehicle when they observed several men standing at an intersection that was a known location for drug sales. R. 24-1 at 1-2.[2] The officers detained the men and handcuffed them to a fence. *Id.* at 2. The officers' investigation led them to arrest one of the men and put him in their car. *Id.*

As the officers were about to release the other men they had handcuffed to the fence, Wells and two other men walked down the street and began shooting at the officers and the men who were handcuffed to the fence. *Id.* One of the officers and one of the men handcuffed to the fence were shot. *Id.* An innocent bystander was also shot. *Id.* The officers returned fire, and Wells was wounded and apprehended at the scene. *Id.* The other two shooters fled, but were later apprehended. *Id.*

---

[2] Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Wells has not attempted to rebut this presumption. Accordingly, the state court's factual findings are presumed correct.

Wells and the two other shooters were charged and went to trial. *Id.* at 3. Wells admitted his involvement in the shooting and also implicated his two co-defendants in oral and written statements to the police, *id.* at 3, and this statement was admitted into evidence against him through the testimony of an Assistant State's Attorney. *See* R. 24-2 at 263. A witness testified that Wells and his friends had a "feud" with the men who were handcuffed to the fence. *See* R. 24-3 at 331. That witness testified that he was with the men immediately prior to the police detaining them, and that he witnessed and participated in an argument with Wells and his friends. *Id.* at 331-35. The witness testified further that when the argument ended and Wells and his friends were about to leave, Wells said that they would "be back." *Id.* at 335.

The three officers who handcuffed the men to the fence testified at trial and identified Wells as one of the shooters who used a carbine rifle. *See* R. 24-3 at 541, 543. One officer also testified that he saw Wells attempt to throw the carbine rifle on to the roof of a garage, but it fell to the ground and was recovered at the scene. *Id.* at 552-53. A forensic expert testified that multiple fired cartridge cases were recovered from the scene that were tested and found to have been fired by the carbine rifle the officer saw Wells using and attempt to throw on the roof of a garage. *See* R. 24-4 at 729, 743, 745-46, 751. Another forensic expert testified that gun powder residue was found on the sweatshirt Wells was wearing that day in a location on the sleeve consistent with use of a carbine rifle like the one recovered at the scene. *See id.* at 480-85.

One of the men handcuffed to the fence was shot five times, and one of those bullets was recovered from his body. Ballistics tests admitted into evidence at trial showed that the bullet recovered from his body was not fired by any of the guns used by Wells or his two co-defendants. *See* R. 24-4 at 750. This test also did not rule out the possibility that the bullet in question was fired from one of the officers' guns. *See id.* On March 7, 2007, Wells was convicted by a jury. *See* R. 24-16 at 28.

## II. Procedural History

Wells, represented by counsel, appealed his conviction challenging his sentence. *See* R. 24-6. The state appellate court reversed his sentence in part and remanded for resentencing, although this did not result in a change in the length of Wells's sentence. *See* R. 24-1; R. 24-10; R. 24-15 at 26; R. 24-16 at 180. Wells filed a pro se petition for leave to appeal in the Illinois Supreme Court, raising a number of issues that he had not raised in the appellate court. *See* R. 24-13. The Illinois Supreme Court denied leave to appeal on September 29, 2010, *see* R. 24-14, and Wells did not file a petition for writ of certiorari in the United States Supreme Court.

While his petition for leave to appeal was still pending in the Illinois Supreme Court, Wells filed a pro se petition for relief from judgment in the state trial court. *See* R. 24-16 at 102-23. The trial court denied the petition on November 1, 2010, *see* R. 24-16 180-84, and Wells did not appeal.

Wells then filed a pro se postconviction petition in the state trial court on December 5, 2011, raising many claims. *See* R. 24-17 at 1-29. The trial court denied

4

the petition, holding that Wells's claims were "waived because they are matters of record which [Wells] failed to bring on direct appeal." R. 24-17 at 167. The trial court also found several of Wells's claims procedurally deficient because he had not supported them with affidavits or other evidence. *See id.* at 164-77.

Wells appealed, represented by counsel, but only argued that his trial counsel was ineffective for failing to conduct a proper pretrial investigation. *See* R. 24-18 at 1-21. Wells also attempted to filed a pro se supplemental brief. No such brief is in the record, but correspondence from the appellate court clerk states that a brief Wells submitted to the clerk was returned for failure to include proof of service. *See* R. 24-21; R. 24-22; R. 24-23. The appellate court denied Wells's appeal. *See* R. 24-24. Wells then filed a pro se petition for leave to appeal with the Illinois Supreme Court, *see* R. 24-27, which was denied on September 24, 2014. *See* R. 24-28.

On December 8, 2014, Wells filed a pro se motion in the state trial court for postconviction ballistics testing under 725 ILCS 5/116-3. *See* R. 24-15 at 30. Wells sought to have a bullet recovered from the body of one of the men the police handcuffed to the fence "compared to the recovered officers' guns using [Integrated Ballistics Identification System] technology," to determine whether that bullet came from one of the officers' guns. R. 9 at 5. In response the State filed an affidavit from an Illinois State Police forensic scientist stating that a bullet comparison test using a different method than the Integrated Ballistics Identification System had already been performed prior to Wells's trial, and that the testing Wells seeks "would not

5

further enhance the comparisons already performed." *See* R. 24-29 at 14. As of July 31, 2015, this motion was pending in the state court.

Wells filed his petition in this Court on February 25, 2015. He raises 16 grounds in support of petition, many of which include sub-grounds. *See* R. 7. In response, the Warden argues that (1) Wells's petition is untimely, (2) all his claims are procedurally defaulted, and (3) all his claims are insufficiently pled under Habeas Rule 2(c).

## Analysis

### I. Timeliness

Under 28 U.S.C. § 2244(d)(1), a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Wells's conviction became final when the time for seeking review by the United States Supreme Court expired. *See Gonzalez v. Thaler*, 132 S.Ct. 641, 653 (2012). The Illinois Supreme Court denied Wells's petition for leave to appeal on September 29, 2010, and his time for seeking review by the United State Supreme Court expired 90 days later on December 28, 2010. *See* Sup. Ct. R. 13.

Wells tolled the limitations period when he filed his postconviction petition in state court on December 5, 2011. *See* 28 U.S.C. § 2244(d)(2); *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002). The limitations period remained tolled until September 24, 2014 when the Illinois Supreme Court denied his petition for leave to appeal. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (providing for no tolling while certiorari petition following conclusion of state postconviction proceedings was pending); *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) (indicating no tolling available during the 90-day period where habeas petitioner could have, but did not, seek certiorari following conclusion of state postconviction proceedings).

More than one year of untolled time has elapsed since the limitations period for Wells's petition began to run on December 28, 2010 when his conviction became final. Between that day and December 5, 2011, when he filed his postconviction petition, 342 days of untolled time elapsed. Then another 154 days of untolled time elapsed between September 24, 2014, when the Illinois Supreme Court denied his petition for leave to appeal the denial of his postconviction petition, and February 25, 2015, when Wells filed his habeas petition in this Court. Thus, a total of 496 days of untolled time has elapsed since the one-year limitations period began

7

running, making Wells's petition untimely. *See Jones v. Hulick*, 449 F.3d 784, 788-89 (7th Cir. 2006) (timeliness of habeas petitions is measured by adding periods of untolled time).

Wells's two other postconviction proceedings do not alter this calculation. Wells filed a petition for relief from judgment on September 9, 2010, which the trial court denied on November 1, 2010. Wells did not appeal. Thus, this proceeding occurred within the time period during which Wells's direct appeal was pending and that statute of limitations under 28 U.S.C. § 2244 was already tolled. Additionally, Wells's petition for postconviction ballistics testing under 725 ILCS 5/116-3 has no tolling effect because "a motion under § 116-3 is not a collateral review of the underlying judgment and therefore does not toll the statute of limitations for bringing a federal habeas corpus petition." *Price v. Pierce*, 617 F.3d 947, 952 (7th Cir. 2010).

The statute of limitations for a habeas petition can also be tolled due to extraordinary circumstances or a fundamental miscarriage of justice. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Holland v. Florida*, 560 U.S. 631, 648 (2010). Wells does not address the Warden's argument that his petition is untimely. He makes no argument that the statute of limitations should be tolled due to extraordinary circumstances. Without directly addressing the timeliness issue, Wells argues that that ballistics testing he seeks could show that he is actually innocent. But even if that testing were to definitively reveal that the bullet in question came from one of the officers' guns, that evidence would not have

changed the outcome of Wells's trial. Evidence was presented at trial that the bullet in question did not come from the guns used by Wells or his co-defendants, and might have come from one of the officer's guns. Moreover, even though only one bullet was recovered from his body, the individual in question was shot five times. Clearly, the jury in Wells's case determined that he was responsible for at least one of the gunshot wounds the man suffered. Evidence that he did not cause all five of the wounds does not make it unreasonable to conclude that he caused at least one.

Additionally, there was more than enough evidence presented at trial for the jury to find Wells guilty beyond a reasonable doubt. A witness testified that Wells had argued with the men immediately prior to the police handcuffing them to the fence. Three police officers identified Wells as one of the shooters. One of the police officers testified that he saw Wells fire and then attempt to dispose of a rifle that forensic evidence showed was fired at the scene of the incident. And gunshot residue was found on Wells's shirt in a location consistent with use of the rifle recovered from the scene.

Therefore, since Wells has not presented any new evidence or made any sufficient argument that he is actually innocent, the statute of limitations is not tolled in this case.

## II. Procedural Default & Sufficiency of the Pleadings

The Warden also argues that Wells's claims are procedurally defaulted for failure to present them in state court. The Warden acknowledges, however, that this argument is dependent upon consideration of the legal effect of Wells's

9

attempts to file pro se briefs in support of both his direct appeal and postconviction petition. *See* R. 23 at 16-29. As the Warden's arguments in support of procedural default highlight, consideration of the effect of Wells's pro se actions raises unsettled legal questions regarding whether a petitioner preserves an argument by making it in a pro se brief even though he is represented by counsel. *See Kizer v. Uchtman*, 165 Fed. App'x 465 (7th Cir. 2006); *United States ex rel. Watson v. Pfister*, 2015 WL 1186795, at *4 n.1 (N.D. Ill. Mar. 11, 2015) (citing cases). Further, consideration of whether Wells's claims are procedurally defaulted might also require supplementing the record with copies of Wells's pro se briefs should they exist. Since Wells's claims are clearly untimely it is unnecessary for the Court to address these issues relevant to procedural default. Similarly, the Court's finding that Wells's petition is untimely makes it unnecessary for the Court to examine each of the many grounds and sub-grounds Wells has asserted in support of his petition in order to determine whether they are adequately pled.

### III. Motions to Stay and for Ballistics Testing

Wells also seeks a stay and an order that additional ballistics testing be performed on the bullet recovered from the body of the man handcuffed to the fence. Since the Court has found that Wells's petition is untimely, Wells's motion for a stay is moot.

Futher, the Court has found that any additional testing of the bullet would not produce new evidence because evidence was presented at trial that the bullet recovered from the body of the man handcuffed to the fence was not fired by the

10

guns used by Wells and his co-defendants, and that it could have been fired by one of the officers' guns. Since this is all Wells hopes to learn from additional testing there is no basis for the Court to order such testing.

## IV. Certificate of Appealability

Lastly, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez,* 132 S.Ct. at 649 n.5. To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000); *see also Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). Here, the Court's denial of Wells's claims as untimely rests on application of well-settled precedent. Accordingly, certification of any of Wells's claims for appellate review is denied.

## Conclusion

For the foregoing reasons, Wells's petition, R. 1; R. 7, and motions, R. 8; R. 9, are denied, and the Court also declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 3, 2016